MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
NICHOLAS D. FRAM (State Bar No. 288293)
nicholas.fram@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Quotient Technology Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Quotient Technology Inc., | Case No. 5:16-cv-5954 |
| Plaintiff, | **Complaint For:** |
| vs. | **(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 ET SEQ.;** |
| Doe No. 1, | |
| Defendant. | **(2) VIOLATION OF CALIFORNIA PENAL CODE §§ 502 ET SEQ.;** |
| | **(3) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ.;** |
| | **(4) MISAPPROPRIATION; AND** |
| | **(5) AIDING AND ABETTING IN MISAPPROPRIATION.** |
| | **DEMAND FOR JURY TRIAL** |

32361995.1

COMPLAINT

1      Plaintiff Quotient Technology Inc. ("Quotient" or "Plaintiff"), by and through its attorneys, brings this Complaint against Defendant Doe No. 1 ("Defendant") for injunctive relief and damages. Quotient alleges as follows:

1. Quotient is a leading digital promotions and media company that connects brands, retailers and consumers. Among other activities, it owns and operates the website Coupons.com, where consumers can browse a wide collection of promotional offers, including digital printable coupons. Consumers can visit Coupons.com, select the offers that are of interest to them, and print these offers directly from the website in the form of coupons.

2. Quotient works closely with its key clients—consumer packaged goods ("CPG") companies, which provide discounts through coupons, and retailers, which accept them from consumers. Quotient's CPG clients offer temporarily lower prices through coupons for a variety of reasons, including to introduce a new product to consumers or to encourage new customers to try a product.

3. As a condition of using Quotient to offer coupons to consumers, CPG clients require strict security measures, including customized coupon printing software that consumers may download prior to printing digital printable coupons. One such measure is a technically-created device-based limit on the number of times a device may attempt to print a particular coupon. Those who install this software must agree to Quotient's End User License Agreement ("EULA"). The EULA explicitly notes the existence of print attempt limits and provides that Quotient's software is for personal, noncommercial use only. It also incorporates by reference Quotient's Terms of Use, in which users agree not to use any automated means to access the Coupons.com website or Quotient's coupons, networks or systems.

4. On information and belief, Defendant claims to have created "Springroll," a computer script and/or program designed to circumvent Quotient's technical security measures, including Quotient's device-based print attempt limits. Through this hack and/or other technical means, Defendant has circumvented Quotient's technical security measures in order to obtain more digital printable coupons than Quotient's software would otherwise permit a single device to obtain from its servers. Circumventing Quotient's technical barriers in order to access Quotient's

32361995.1

-1-

COMPLAINT

servers in this way was not authorized by Quotient and/or exceeded authorized access.

5. In addition, Defendant has been selling these coupons for commercial and/or personal gain over the Internet. On information and belief, Defendant has also been selling "Springroll" to others, assisting and enabling them in circumventing Quotient's technical security measures and/or selling illicitly obtained coupons.

6. By engaging in this activity, Defendant has violated an array of laws, including the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq. (the "CFAA"), California Penal Code §§ 502 et seq., and California Business and Professions Code §§ 17200 et seq., and has engaged in unlawful acts of common law misappropriation and aiding and abetting in misappropriation.

7. Defendant's unlawful conduct has harmed and threatens Quotient's business in several ways. Defendant's printing of digital printable coupons in excess of the print attempt limits set by Quotient's clients has caused tension with Quotient's clients and has the potential to damage Quotient's existing and prospective business relationships. Defendant's circumvention of Quotient's technical barriers has caused Quotient to expend time and resources investigating and responding to Defendant's misconduct. Defendant's sale and/or transfer of the script Defendant claims to have created has enabled others to harm Quotient's business in these ways as well. Defendant's conduct, which includes selling misappropriated coupons over the Internet, threatens the goodwill and trust that Quotient's clients place in it as a trusted partner for distributing their promotional offers.

8. Quotient does not currently know the identity of Defendant and brings this action to identify Defendant and to obtain permanent injunctive relief halting Defendant's unlawful conduct. Defendant's activities, if not enjoined, threaten ongoing and irreparable harm to Quotient, including to its relationships with its clients, reputation, and substantial goodwill. Quotient further is entitled to its actual damages, statutory damages, and/or exemplary damages as a result of Defendant's misconduct.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action alleges violations of the CFAA, 18 U.S.C. §§ 1030, et seq. The Court has

supplemental jurisdiction over the state law causes of action pleaded herein pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11. During all relevant times, Defendant has repeatedly, knowingly, and intentionally accessed Quotient's servers located in this judicial district without Quotient's authorization and/or in excess of authorized access. While accessing Quotient's servers, Defendant has had systematic and continuous contacts with this judicial district, and targeted its wrongful acts at Quotient, which is headquartered in this judicial district.

## INTRADISTRICT ASSIGNMENT

12. A substantial part of the events or omissions which gave rise to the claims described herein occurred in Santa Clara County. This action should therefore be assigned to the San Jose Division pursuant to Local Rule 3-2.

## THE PARTIES

13. Quotient is a Delaware corporation with its principal place of business in Mountain View, California.

14. On information and belief, Defendant is a natural person responsible in whole or in part for the wrongdoing alleged herein. Quotient intends to seek expedited discovery to learn the identity of Defendant and will amend this Complaint if and when the identity of such person and/or the scope of that person's actions becomes known. While Quotient believes that Defendant is acting as a single, natural person, if discovery reveals that the proper defendant is a business organization and/or a group of people, Quotient reserves the right to amend this Complaint accordingly.

## FACTS

### The Quotient Promotions Network

15. Quotient delivers digital promotions, including digital printable coupons, and media to shoppers through mobile, web and social channels. Leading CPG manufacturers, as well as leading retailers in the grocery, drug, dollar, club and mass merchandise channels, use

Quotient's platform to engage shoppers at the critical moments when they are choosing what products to buy and where to shop. Quotient's CPG clients include companies like Clorox, Procter & Gamble, General Mills, and Kellogg's.

16. Among other activities, Quotient owns and operates the website Coupons.com, where consumers can browse a collection of promotional offers. Quotient also distributes digital coupons through a network of third-party publishers and other partners, including retailer websites (together with Coupons.com, the "Quotient Promotions Network"). Consumers can visit sites in the Quotient Promotions Network, select the offers that are of interest to them, and print these offers directly from the website in the form of digital printable coupons. Consumers print these offers free of charge.

17. Quotient has invested and plans to continue to invest substantial time, labor, skill, and financial resources in the development and maintenance of its platform and the Quotient Promotions Network. It has raised a significant amount of money that it has invested in its technology and in its relationships with its clients over a period of many years.

**Quotient's Technical Safeguards and Security Measures to Protect Against Unauthorized Access to Coupons from the Quotient Promotions Network**

18. Quotient's CPG clients require strict security measures before entrusting Quotient with distributing digital printable coupons for their products. Limiting the number of coupon print attempts per device is one of the ways that Quotient's clients control the cost and scope of their digital promotional activities.

19. Without sufficient security measures, Quotient's CPG clients would either not make their digital printable coupons available through the Quotient Promotions Network as an alternative to paper, or would otherwise limit the volume of coupons distributed through it. This would deprive consumers, brands, and retailers of the benefits of digital printable coupons.

20. Limits are not new to the custom and practice of using coupons. Traditionally, consumers accessed paper coupons by clipping them from newspaper inserts or obtaining them from retailers. Paper coupons often had—and continue to have—terms and conditions prohibiting copying, transferring or selling them. Limiting the number of digital coupons that a device can

32361995.1

-4-

COMPLAINT

print through technical protection measures is a modern mechanism that companies like Quotient employ in order to enforce the terms that their CPG clients require as a condition of making digital printable coupons available to consumers.

21. Quotient works hard to ensure that print attempt limits that its CPG clients require are respected. One way Quotient enforces these print attempt limits is through customized coupon printing software that a consumer may install prior to accessing digital printable coupons through the Quotient Promotions Network.[1] This software is designed by Quotient and licensed to consumers for free.

22. After installing Quotient's custom software, consumers may visit sites in the Quotient Promotions Network and select the digital printable coupons of interest to them. Quotient's software then sends these digital printable coupons directly from Quotient's servers to the consumer's printer. The software prevents consumers from downloading coupons onto their devices in an effort to prevent consumers from using third party software to manipulate these coupons.

23. Quotient's software also ensures that a device cannot attempt to print a coupon in excess of the print attempt limits set by Quotient's CPG clients. It does this by assigning a unique device identifier (or "device ID") to each device that downloads Quotient's software and makes a print attempt. Quotient's software (both on the consumer's device and on Quotient's servers) takes attributes of the consumer's device that are persistent and reliable and uses that information to assign each device a unique device ID. Quotient's software will prevent a device (identified through its device ID) from attempting to print any additional copies of a given coupon if it detects that that particular device has already printed or attempted to print the maximum allowed number of that particular coupon. If a consumer uninstalls and then re-installs the coupon printing software on a device, Quotient will assign the prior device ID to that device.

24. Quotient does not obtain any consumer identifying information when creating the

---

[1] There are other ways to access Quotient's digital printable coupons and other promotions that are not described in this Complaint because they are not directly relevant to the technical barriers that Defendant circumvented or to Defendant's illegal conduct.

32361995.1
-5-
COMPLAINT

1  device ID.

2      25.    Each coupon that is printed contains bar codes that are scanned at the point of sale.
3  Each printed coupon also carries a unique identifier that is embedded through encryption in a bar
4  code, enabling each coupon to be traced from print to redemption.  Quotient also prevents
5  customers from making photocopies of Quotient's coupons.  The below screenshot is an example
6  of one of Quotient's digital printable coupons (void language added):



**Defendant's Unlawful Activities**

17      26.    On information and belief, Defendant began accessing coupons from Quotient's
18  servers through Quotient's software as far back as October 2012.  At some subsequent point,
19  Defendant discovered or developed a method of circumventing Quotient's device-based print
20  limits by deceiving Quotient's servers into perceiving that Defendant had thousands of different
21  devices, to each of which Quotient's software would assign a different device ID.  On information
22  and belief, Defendant called this computer script "Springroll."

23      27.    Defendant would then use his or her device to make calls to Quotient's servers
24  using the "Springroll" hack, which can generate dozens of different device IDs in less than a
25  minute.  Quotient's servers interpreted these calls as coming from different devices, not one single
26  physical device.  On information and belief, Defendant did not have thousands of different devices
27  making calls to Quotient's servers.

28      28.    By engaging in this behavior, Defendant was able to circumvent the technical

1  measures that Quotient has implemented to enforce the device-based print attempt limits required
2  by its clients.  As a result, Defendant has been able to make thousands of additional successful
3  calls to Quotient's servers and obtain thousands of additional digital printable coupons that
4  Defendant would not have been able to obtain had Defendant not circumvented Quotient's
5  technical barriers.
6     29.    After circumventing Quotient's technical barriers and obtaining from Quotient's
7  servers more coupons than Defendant was authorized to print, Defendant made these coupons
8  available for sale.  Quotient is informed and believes that Defendant's primary method of offering
9  these coupons for sale was through Instagram, a photo sharing social networking service.
10 Defendant, who has been known by the Instagram user names "IPFairy" and "savedqs," posts
11 photos of the coupons Defendant wishes to sell, along with the price per set.  As demonstrated in
12 the below screenshots, Defendant asks potential customers to email him or her to place an order
13 and then send payment through PayPal, an online money transfer service.



28    30.    Quotient is informed and believes that Defendant is the creator of the "Springroll"

1  hack that permits Defendant to circumvent Quotient's technical barriers, as demonstrated by the
2  following screenshot:



      31.     Quotient further is informed and believes that Defendant has also been selling the "Springroll" hack to other individuals, thereby enabling them to circumvent Quotient's technical barriers and device-based print limits.  For example, Defendant explicitly states in the below screenshot that someone named "Stacy Martinez" "did in fact purchase my Springroll vm on May 7th."



      32.     Defendant goes on to advertise that he or she, on information and belief through the

1  "Springroll" or similar hack, was able to print 27 coupons in 60 seconds.  Commenters on the

2  Instagram post in the below screenshot repeatedly asked the defendant about purchasing the hack

3  ("OMG . . . do u [sic.] still sell the software to be able to print unlimited [coupons] on my own?

4  Would love to purchase if so") and questions about how it works (in discussing whether it works

5  on Windows or Apple Macintosh operating systems, one commenter wonders whether "it'd work

6  in Parallels," a piece of software that permits those with Apple computers to run the Windows

7  operating system).  Defendant also advertised the sale of the hack for $8, as demonstrated below.





32361995.1

-9-

COMPLAINT

33. Defendant has set his or her Instagram account to private. This allows Defendant to control who sees the coupons offered for sale and to conceal the illicit sales activity.

34. Defendant did not have permission or authorization from Quotient at any point in time to circumvent its technical barriers, violate the print attempt limits, commercially sell or transfer coupons obtained from the Quotient Promotions Network (which are otherwise available for free to any legitimate consumer, subject to print attempt limits) to third parties, or develop and/or sell the "Springroll" hack that permits others to engage in similar illegal behavior.

**Quotient's Response**

35. Quotient has identified at least one IP address that it believes was used by Defendant, the Internet service provider ("ISP") that assigned the IP address to Defendant, the dates and times that Defendant's device accessed Quotient's servers, and the number of times that Defendant's device has accessed and printed Quotient's coupons. Quotient has also identified several email addresses associated with Defendant. Quotient has taken steps and imposed additional technical security measures to attempt to disable Defendant's device's access to Quotient's coupons.

36. Despite this investigation, Quotient still does not know Defendant's name or residential address. Quotient expects to be able to identify Defendant by serving third-party discovery on the ISP to which Quotient has traced Defendant's device's IP address, as well as Instagram and, if necessary, other third parties identified in Defendant's Instagram posts. These entities are in possession of identifying information that will help Quotient identify Defendant. Quotient intends to file a motion to expedite these discovery requests.

**Defendant Has Caused and Threatens Ongoing and Irreparable Injury to Quotient**

37. By engaging in the activities described above, Defendant has caused, and if not halted, will continue to cause, ongoing and irreparable harm to Quotient, in a variety of ways, including ongoing and irreparable harm to its relationships with its clients.

38. Quotient's CPG clients trust Quotient to make their digital printable coupons available according to the print attempt limits they set. Without adequate technical measures to enforce these print attempt limits, Quotient's clients may not make their digital printable coupons

1  available through Quotient (or would otherwise limit the volume offered), which would threaten a
2  critical component of Quotient's business.  If Defendant's conduct is not enjoined, Quotient will
3  suffer ongoing and irreparable harm to its reputation and the trust that its CPG clients repose in it,
4  and which Quotient has worked hard for years to earn and maintain.

5    39.    Quotient has expended significant human, financial, and technical resources
6  investigating and responding to Defendant's unlawful activities, including more than a hundred
7  hours of employee time.  This cost to Quotient has been well in excess of $5,000.

8    40.    In May 2016, Quotient sent an email to one of the email addresses associated with
9  Defendant's Instagram account, demanding that Defendant cease and desist accessing Quotient's
10 servers and selling Quotient's coupons.  Defendant did not respond to that email.  Instead,
11 Defendant continued to circumvent Quotient's technical security measures and device-based print
12 limits, continued to make Quotient's coupons available for sale on Instagram, and on information
13 and belief continued to sell the "Springroll" hack to aid and enable others to do the same.
14 Defendant's conduct demonstrates that it is necessary and appropriate for this Court to enjoin
15 Defendant to prevent future violations of his or her legal obligations.

16   41.    Quotient takes the trust that its CPG clients repose in it very seriously.  It has a
17 deserved reputation for rigorously abiding by the guidelines set by its CPG clients, including print
18 attempt limits.  Defendant's circumvention of Quotient's technical barriers undermines this trust
19 and Quotient's reputation, potentially damaging existing business relationships and future business
20 prospects.

21 **FIRST CLAIM FOR RELIEF**

22 **Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq.**

23   42.    Quotient realleges and incorporates by reference paragraphs 1 through 41 above.
24   43.    Quotient's computers and servers are involved in interstate and foreign commerce
25 and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).
26   44.    Defendant knowingly and intentionally accessed Quotient's computers and servers
27 without authorization or in excess of authorization.  Defendant has circumvented various
28 technological barriers Quotient has employed to enforce print attempt limits and prevent

unauthorized replication of the digital printable coupons it offers.  Defendant circumvented Quotient's technical barriers in order to access Quotient's servers in a way that was unauthorized or exceeded authorized access.

45. After accessing Quotient's computers and servers without authorization or in excess of authorization, Defendant accessed, obtained, used and sold the digital printable coupons generated by Quotient's computers and servers in transactions involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2).

46. Defendant knowingly, willfully, and with an intent to defraud, accessed Quotient's computers and servers without authorization or in excess of authorization, including by circumventing Quotient's technical protection measures, and thereby furthered Defendant's intended fraud and obtained valuable coupons generated by Quotient's computers and servers that Defendant sold or used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4).

47. Quotient has suffered damage and loss by reason of these violations, including, without limitation, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of the coupons generated by its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $5,000 aggregated over a one-year period.

48. In addition, Quotient has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendant. Accordingly, Quotient is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

**California Comprehensive Computer Access and Fraud Act, Cal. Penal Code §§ 502 et seq.**

49. Quotient realleges and incorporates by reference paragraphs 1 through 41 above.

50. Quotient's computers and servers are computers, computer systems, and/or computer networks within the meaning of Cal. Penal Code § 502(b).

51. Defendant has circumvented various technological barriers Quotient has employed to protect its computers, servers, and data (including the coupons its servers generate) against unauthorized access and use.

52. Defendant wrongfully obtained and used valuable data (in the form of digital printable coupons) that originated in Quotient's servers.

53. Defendant knowingly and without permission accessed, took, copied and made use of data (in the form of digital printable coupons) from Quotient's computers, computer systems, and/or computer networks, including to wrongfully control and/or obtain such data, in violation of Cal. Penal Code §§ 502(c)(1) & (2).

54. Defendant knowingly and without permission accessed or caused to be accessed Quotient's computers, computer systems, and/or computer networks in violation of Cal. Penal Code § 502(c)(7).

55. As a direct and proximate result of Defendant's unlawful conduct, Defendant has caused damage to Quotient in an amount to be proven at trial.  Quotient is also entitled to recover its reasonable attorney's fees pursuant to Cal. Penal Code § 502(e).

56. Quotient believes that Defendant's acts were willful and malicious, including that Defendant's acts described above were done with the deliberate intent to harm Quotient and intentionally misappropriate Quotient's coupons.  Quotient is therefore entitled to punitive damages.

57. In addition, Quotient has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendant. Accordingly, Quotient is entitled to injunctive relief.

## THIRD CLAIM FOR RELIEF

**Unfair Competition, California Business and Professions Code §§ 17200 et seq.**

58. Quotient realleges and incorporates by reference paragraphs 1 through 41 above.

59. California Business and Professions Code Section 17200 et seq. prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

60. Defendant has engaged in unlawful and unfair business practices by discovering or developing the "Springroll" hack or other technical means and then selling it to others so that others can circumvent Quotient's technical security measures and obtain coupons from Quotient's servers beyond the maximum allowed number set by Quotient's device-based limits.

61. Developing and selling the "Springroll" hack or other technical means and charging for coupons obtained from the Quotient Promotions Network (which are otherwise available for free to any legitimate consumer), as alleged herein, is an unfair business practice that is immoral, unethical, and/or unscrupulous, and substantially injurious to Quotient.

62. Defendant has engaged in violations of state and federal law, including violations of the CFAA and California Penal Code § 502, and misappropriation, and aiding and abetting, as alleged herein.

63. Defendant's unlawful and unfair business practices alleged herein have harmed Quotient in the form of costs related to investigating and addressing Defendant's illegal activities and harm to Quotient's goodwill.

64. In addition, Quotient has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendant. Accordingly, Quotient is entitled to injunctive relief.

### FOURTH CLAIM FOR RELIEF

**Misappropriation**

65. Quotient realleges and incorporates by reference paragraphs 1 through 41 above.

66. Quotient has invested substantial time, labor, skill, and financial resources into the creation and maintenance of its platform, the Quotient Promotions Network, including Coupons.com, the software it makes available for free to access coupons on Coupons.com, and its relationships with its CPG clients. Defendant has invested none of his or her own time and resources in developing and building the Quotient Promotions Network, the software, or the relationships with CPG clients.

67. Defendant, without authorization or in excess of authorized access, has circumvented the technical barriers and print attempt limits that Quotient imposes, and thereby has obtained valuable coupons far in excess of the number that Defendant was authorized to print.

68. Defendant's appropriation and use of these coupons was at little or no cost to Defendant, without having to make the substantial investment in time, labor, skill, and resources made by Quotient in developing Coupons.com and the relationships with its clients. By accessing

digital printable coupons beyond the print attempt limits Quotient imposes, Defendant has appropriated for himself or herself the substantial investment of time, effort, and expense that Quotient has expended.

69.     As a result of this misappropriation, Quotient has been forced to expend additional time and resources, including but not limited to, investigating and responding to Defendant's activities, and Defendant has been able to exploit and benefit from Quotient's substantial investment of time, effort, and expense.

70.     Quotient has been and will continue to be damaged as the result of Defendant's acts of misappropriation.

71.     Quotient has suffered and will continue to suffer irreparable injury, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendant.

## FIFTH CLAIM FOR RELIEF

### Aiding and Abetting in Misappropriation

72.     Quotient realleges and incorporates by reference paragraphs 1 through 41 above.

73.     Defendant has discovered or developed the "Springroll" hack (or other methods of circumventing Quotient's technical security measures and print attempt limits) and sold or otherwise transferred such computer scripts and/or programs to other people.

74.     On information and belief, Defendant is aware that circumventing Quotient's technical security measures and print attempt limits constitutes an intentional tort (e.g. misappropriation) and/or wrongful conduct.  On information and belief, Defendant knew that those interested in "Springroll" were going to circumvent Quotient's technical security measures and print attempt limits, given this appears to be the primary use of "Springroll."

75.     By selling and/or otherwise providing such individuals with the "Springroll" hack or other similar script, Defendant has provided substantial assistance and/or encouragement to them to engage in tortious behavior.

76.     As a result of Defendant's aiding and abetting, Quotient has been forced to expend additional time and resources, including but not limited to, investigating and responding to Defendant's activities.

77. Quotient has been and will continue to be damaged as the result of Defendant's aiding and abetting others' acts of misappropriation.

78. Quotient has suffered and will continue to suffer irreparable injury, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Quotient prays that judgment be entered in its favor and against Defendant, as follows:

1. Permanent injunctive relief, enjoining and restraining Defendant (and any employees, representatives, agents, and all persons or entities acting in concert with him or her, if any, during the pendency of this action and thereafter) perpetually from:

   a. accessing or using any site in the Quotient Promotions Network, including Coupons.com, or Quotient's software to obtain digital coupons;

   b. selling or transferring any coupons obtained through any site in the Quotient Promotions Network and/or through Quotient's software, or using any Quotient service for Defendant's own commercial purposes and personal gain; and

   c. further developing, selling or transferring the "Springroll" hack and/or any other similar computer script or technical means that permits users to circumvent Quotient's technical security measures and access Quotient's servers.

2. An order requiring Defendant to destroy all coupons in Defendant's possession that Defendant has obtained from the Quotient Promotions Network or through Quotient's software.

3. An order requiring Defendant to divulge the "Springroll" hack and/or any other similar computer script or technical means that permits users of the script to circumvent Quotient's security measures and access Quotient's servers and destroy all copies of said script or means.

4. An award to Quotient of damages, including, but not limited to, compensatory, statutory, profits of Defendant, and/or punitive damages, as permitted by law.

5. An award to Quotient of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law.

6. And such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Quotient hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.

DATED: October 14, 2016              MUNGER, TOLLES & OLSON LLP

By: */s/ Nicholas D. Fram*
NICHOLAS D. FRAM

Attorneys for Quotient Technology Inc.